UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:08-CR-07 |
| | ) | Greer/Inman |
| RANDALL STREET | ) | |
| SAM JERRY STREET | ) | |
| JOSE ENCARNACION MIRALES | ) | |
| REBECCA MAYSE | ) | |

## REPORT AND RECOMMENDATION

On January 23, 2008, officers of the Washington County Sheriff's Department stopped the vehicle driven by the defendant, Sam Street, in which the defendant, Randall Street, was riding as a passenger. A subsequent search of Sam Street resulted in the discovery and seizure of a .38 caliber handgun. The search of Randall Street's person led to the discovery and seizure of three packages of methamphetamine. Each of these defendants have filed motions to suppress. The defendant Sam Street has filed a motion to suppress any evidence discovered on his person. (Doc. 54). The defendant Randall Street has filed a motion to suppress evidence of the methamphetamine found on his person, as well as statements he made to the law enforcement officers. (Doc. 49).

These motions to suppress have been referred to the magistrate judge pursuant to the standing order of this Court and 28 U.S.C. § 636. An evidentiary hearing was held on March 18, 2008.

Inasmuch as the underlying facts are identical with respect to each motion to suppress, those motions will be addressed in this single report and recommendation.

Some time prior to January 2008, Jimmy Rogers approached the Washington County Sheriff's Department and offered his services as a confidential informant. Mr. Rogers testified that he did so because he wanted to help rid Washington County of illegal drugs; he specifically denied that he did so because he wanted to help himself regarding drug charges then pending against him. Mr. Rogers was not a particularly good witness; in fact, he was a poor witness, and the court simply does not believe his testimony regarding his motivation in offering his services to the Sheriff's Department as a confidential informant. But with that said, there is no doubt that Mr. Rogers approached the Washington County Sheriff's Department and offered to work as a confidential informant. Moreover, there is no doubt that he delivered seven grams of methamphetamine to Lieutenant Remine of the Sheriff's Department, telling Remine that Randall Street was the ultimate source of this methamphetamine.

There was no testimony regarding Rogers' "reliability;" indeed, as far as could be told from the evidence presented, the only evidence regarding Mr. Rogers' reliability was his possession of seven or so grams of methamphetamine which he turned over to Lieutenant Remine.

Lieutenant Remine instructed Rogers to attempt to buy more methamphetamine from Randall Street. According to Rogers, he had several conversations with Randall Street involving the potential purchase of ten ounces of methamphetamine. Ultimately, Rogers and

2

the defendant Street agreed upon the sale of five ounces of methamphetamine. Rogers and Randall Street agreed to consummate the transaction at approximately 10:00 a.m. on January 23, 2008, at the Waffle House Restaurant on Boones Creek Road in Gray, Tennessee. Rogers communicated this information to Remine.

Nine officers of the Washington County Sheriff's Department were assigned to the potential interdiction of this methamphetamine. After 10:00 a.m. came and went with no phone call from Mr. Rogers, the officers went to the Olive Garden Restaurant to eat lunch. While the officers were eating, Rogers called Lieutenant Remine on his cell phone and told him that Randall Street and another person were on their way to the Waffle House on Boones Creek Road to make the sale of the methamphetamine. Rogers reported that Randall Street and another individual would be in a black Ford Mustang with a rear spoiler, outfitted with "low profile tires," tinted windows, and bearing a dealer tag.

Remine, with the other officers, took up positions of surveillance along Interstate 26 with the intent of finding and stopping, on the interstate, the Ford Mustang vehicle described by Rogers. However, after fifteen minutes had elapsed, the officers became concerned that they had already missed the car, as a result of which they went directly to the Boones Creek area to see if perhaps the vehicle already was there. It was not, and the officers prepared to leave the area. The Sheriff, by that time already southbound on Interstate 26, noticed a black Mustang vehicle going in the other direction, and he immediately radioed this information to the other officers. Sergeant Gregg, part of the interdiction team, finally observed the black Mustang vehicle and saw that it was the car described by Rogers; he also noticed that neither

3

the driver nor the passenger were wearing a seat belt, and he imparted this information to Lieutenant Remine. Remine then effected a traffic stop, ostensibly based on the occupants' failure to have on their seat belts.

Lieutenant Remine approached the driver, along with Officer Phillips, whereas Gregg and other officers went to the opposite or passenger side of the car. Lieutenant Remine directed the driver (Sam Street) to get out of the car, and the driver obeyed. Lieutenant Remine directed Sam Street to walk to the rear of his car. As Sam Street did so, he placed a hand in his pants pocket, which immediately caused Officer Phillips concern for officer safety due to the possibility of a concealed weapon. Phillips grabbed Sam Street's hand in order to keep Street's hand in his pocket, and then asked if he had anything in his pocket. Gregg could not overhear Sam Street's response, but he did see Phillips pull Sam Street's hand from his pocket, and then reach in Street's pocket and remove a .38 caliber snub-nose revolver. He held it up in the air and announced to his fellow officers that he had found a weapon.

Upon the announcement that a gun had been removed from Sam Street, Gregg saw the blood drain from Randall Street's face. Gregg immediately asked Randall Street to get out of the vehicle, fearing that inasmuch as the driver was armed, the passenger also might be armed. Further, in Gregg's experience, many methamphetamine dealers are armed, and the officers of course had information that Randall Street was at that time transporting methamphetamine. As Gregg commenced to search Randall Street's person for weapons, Lieutenant Remine asked him "Do you have anything on you that I need to know about?"

Randall Street responded that he had "something" on him, prompting Lieutenant Remine to say that, "I know you've probably got something on you, just tell me what it is." As this conversation was taking place, Gregg was proceeding with his frisk of Randall Street, and had detected three bulges in Randall Street's left coat pocket. About the same time that Gregg felt the three bulges, Randall Street responded to Lieutenant Remine that he was in possession of methamphetamine.

### *SAM STREET'S MOTION TO SUPPRESS (DOC. 51).*

Sam Street complains the traffic stop was a pretext for the real reason, *viz*, to inquire about the presence of drugs. He also complains that the officer's motivation to search for drugs was based upon information supplied by an anonymous tipster.

As an initial matter, the tipster was not anonymous. His identity (Jimmy Rogers) was known to the officers. In any event, it is an irrelevant issue as far as Sam Street is concerned, for reasons discussed hereafter.

It is undisputed that neither Sam Street nor Randall Street was wearing a seat belt prior to the stop of the vehicle. It is a violation of Tennessee law to operate a passenger motor vehicle on any highway unless the operator and all passengers over the age of four are restrained by a safety belt while the vehicle is in motion.[1] That the traffic stop was pretextual is irrelevant so long as there was probable cause to believe that a traffic violation had occurred. *See, Whren v. United States*, 517 U.S. 806 (1996); *United States v. Johnson*, 242 F.3d 707, 6th Cir., *cert*. denied, 543 U.S. 863 (2001); *United States v. Ferguson*, 8 F.3d 385

---
[1] Tenn. Code Ann. § 55-9-603(a)(1).

(6th Cir. 1993). Accordingly, inasmuch as neither occupant of the vehicle was wearing a seat belt, there was probable cause to believe that a traffic violation had occurred, as a result of which the traffic stop was proper, notwithstanding that the officers' true motivation was to investigate a potential drug transaction.

Once the traffic stop was accomplished, it was proper for the officer to order the driver to exit the vehicle, notwithstanding that the only matter at issue at that point was a relatively minor traffic violation. The Supreme Court has made it clear that it is permissible to order the driver to exit his vehicle under such circumstances. *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). Moreover, it is permissible for the officers to direct *the passenger* to exit the vehicle under such circumstances. *Maryland v. Wilson*, 519 U.S. 408 (1997).

To repeat, the stop of the vehicle which Sam Street was driving was permissible inasmuch as there was probable cause to believe that a traffic violation occurred. Further, it was permissible under the Fourth Amendment to order the driver to get out of the car.

When Mr. Sam Street exited his car and began walking to the rear of it, he put his hand in his pocket, a move reasonably calculated to cause any law enforcement officer some amount of concern for his own safety and the safety of his fellow officers. Thus, it was reasonable for Officer Phillips to instruct Mr. Street to remain still, to leave his hand in his pocket, and then reveal what he had in that pocket. Obviously, when it was discovered that Sam Street had a firearm in his pocket, it became incumbent upon the officers to remove it and to notify the fellow officers that a weapon had been found.

In summation, the stop of the vehicle in which Sam Street was driving did not violate

the Fourth Amendment and neither did the officer's instructions to Mr. Sam Street to get out of the car. Inasmuch as officer safety was immediately implicated by Sam Street's placement of his hand in his pants pocket, it was no violation of the Fourth Amendment for the officer to ascertain what Mr. Street had in his pocket. When it was discovered that Street had a firearm, it was reasonable to seize that firearm immediately, again for officer safety.

There is no basis to suppress evidence of the firearm, and it is respectfully recommended that Mr. Sam Street's motion to suppress (Doc. 54) be denied.

### *RANDALL STREET'S MOTION TO SUPPRESS (DOC. 49).*

The passenger, Randall Street, argues that there was no basis to search him even in light of the fact that a gun had just been seized from the driver. He relies upon *United States v. Wilson*, 506 F.3d 488 (6th Cir. 2007). In *Wilson*, a vehicle was stopped because an officer noted that neither the driver nor the passenger was wearing a seat belt. After some discussion between the officer and the occupant of the car, which revealed some inconsistency between the occupants' stories, and upon learning that the driver had been convicted on a federal drug charge, the officer instructed both men to get out of the car. During a pat down search of the passenger (Wilson), a pound of cocaine was discovered. The Sixth Circuit upheld Wilson's motion to suppress, noting that the car in which these two men were riding had been pulled over only because the occupants were not wearing their seat belts, a minor traffic violation. *Id.,* 494. *Wilson* notes that *Terry* allows a reasonable search for weapons when the officer has reason to believe that he may be dealing with an armed individual. *Terry* does not require that the officer be absolutely certain that the individual is armed; rather, "'the issue

7

is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" 506 F.3d at 492. However, the court also pointed out that the driver's acknowledgment that he had served time on a drug charge did not suggest that the passenger might be armed. *Id.* at 494.

The precedent upon which *Wilson* relies is *United States v. Bell*, 762 F.2d 495 (6th Cir. 1985). The issue in *Bell* is succinctly stated in the first paragraph of the opinion:

> The United States appeals from an order suppressing an automatic handgun seized from Wayne Bell by an agent of the Federal Bureau of Investigation following a frisk which occurred as a result of Bell's presence in an automobile with an individual being arrested on a felony warrant.

762 F.2d at 496.

The magistrate judge had found that "the only basis for the frisk was the fact that Bell was in the company of a suspect legitimately considered armed and dangerous. *Id.,* 497. The Sixth Circuit explicitly declined to adopt the so-called "automatic companion" rule, i.e., a rule that all companions of an arrestee within the immediate vicinity may be constitutionally subjected to a pat-down search to ensure that they are unarmed. *Id. ,* 498. Nevertheless, the Sixth Circuit reversed the district court's suppression of the hand gun, finding that the totality of the circumstances provided the "specific and articulable facts" required by *Terry v. Ohio*, 392 U.S. 1 (1968), to support a pat-down search of the passenger. First, the court pointed out that law enforcement officers "are faced with a less substantial task in justifying the limited intrusion of a patdown when its subject is seated in a car, than when approaching an

individual on the street or in some other circumstance," inasmuch as the risk confronting an officer by a person seated in a car is inordinately higher. *Id.* p. 500, fn. 6. Next, the officer knew that he was approaching an automobile that contained a man reasonably suspected of being armed and dangerous. *Id.,* p. 500. Further, the agent, in assessing the danger to himself, was reasonably entitled to consider the fact that Bell was in the company of a man whom was known to be armed and dangerous. *Id.* , 501. In other words, in *Bell* the Sixth Circuit simply pointed out that the totality of the circumstances should be considered in determining the reasonableness of a pat down search.

What were the circumstances known to the officers on January 23, 2008, when they stopped the vehicle driven by Mr. Sam Street and in which Mr. Randall Street was riding as a passenger? First, the officers had information that Randall Street was on his way to consummate a methamphetamine transaction. To be sure, the information of the officers was based on the report of Jimmy Rogers, an informant whose information had not been proven reliable on previous occasions, or whose information had been corroborated by independent means. Thus, Mr. Rogers' information, *standing alone*, perhaps might not have provided probable cause to stop and search the vehicle and its occupants. But as *United States v. Arvizu*, 534 U.S. 266 (2002) teaches, it is not appropriate for the court to disassemble the circumstances of a traffic stop into its individual segments, analyzing each one in isolation. Rather, the circumstances are to be considered together. Although Rogers had not been proven reliable or his information corroborated, he did deliver to the Washington County Sheriff's Department seven ounces of methamphetamine which he claimed to have obtained

9

indirectly from Randall Street. He also described with great particularity the vehicle in which Randall Street would be traveling, and where the drug transaction was to occur. Again, perhaps this information did not rise to the level of probable cause, but that is not the issue; the dispositive issue is really one of officer safety. The discovery of a firearm on Mr. Sam Street's person, coupled with the fact that these officers had information that the occupants were on their way to make a delivery of methamphetamine, gave them legitimate concern for their safety, such that a pat down search of Mr. Randall Street was more than appropriate. Viewed from the officers' perspective, they had just discovered a concealed firearm on the person of a man whom they believed was on his way to conclude a drug transaction. Did the Fourth Amendment require them to ignore the possibility that the passenger also might be armed, and that he might use that weapon? Under the totality of the circumstances, that question is answered in the negative.

Presumably the statement which Randall Street asks to be suppressed is his response to Lieutenant Remine's question about whether he had anything on him, *viz.*, that he was in possession of methamphetamine.

Remine's question was directed toward the potential presence of a firearm, as was Gregg's pat down search of Randall Street. Even if it be assumed that Randall Street was effectively in custody for purposes of triggering the officers' obligation to advise defendant of his right to remain silent, Remine's inquiry falls within the "public policy safety exception" to the requirement for constitutional warnings under *Miranda v. Arizona.*[2] *See,*

---

[2] 384 U.S. 436, (1966).

*United States v. Talley*, 275 F.3d 560 (6th Cir. 2001).

The frisk of Randall Street did not violate the Fourth Amendment, and Remine's question to Street did not require preceding *Miranda* warnings. It is respectfully recommended that Randall Street's motion to suppress (Doc. 49) be denied.[3]

Respectfully submitted,

                                                      s/ Dennis H. Inman
                                                United States Magistrate Judge

---

[3] Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).